IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LINDA JOHNSON-MOSLEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-0184-CG-N |
| | ) | |
| ALABAMA UNIFIED JUDICIAL | ) | |
| SYSTEM, ADMINISTRATIVE | ) | |
| OFFICE OF COURTS, AND THE | ) | |
| JUVENILE COURT OF MOBILE | ) | |
| COUNTY, ALABAMA, HON. | ) | |
| EDMOND NAMAN AND | ) | |
| LAWRENCE BATTISTE | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

<u>ORDER</u>

This matter is before the court on the motion for summary judgment
(Doc. 40) filed by the defendants, the Alabama Administrative Office of
Courts (the "AOC"), the Juvenile Court of Mobile County, Alabama (the
"Juvenile Court"), Judge Edmond Naman ("Judge Naman"), and Lawrence
Battiste ("Battiste") (collectively, the "defendants").  The court has reviewed
the parties' briefs in support and opposition (Docs. 40, 44, 45, 50, 51)[1] and the
matter is now ripe for resolution.  For the reasons stated below, the
defendants' motion for summary judgment is due to be **GRANTED.**

---

[1] Plaintiff's motion for leave to file a sur-reply, (Doc. 51), to which the
Defendants have not objected, is **GRANTED**.  Plaintiff's motion to strike
Defendants' reply and to strike the accompanying Affidavit (Doc. 52) is
**DENIED AS MOOT**.

## I. FACTUAL BACKGROUND

The plaintiff, Linda Johnson-Moseley ("Moseley") is a 60-year-old African-American female who has been employed by the Juvenile Court as a Juvenile Probation Officer for over 37 years.  Doc. 24 at 3.  She has over 40 years of experience in the fields of psychology and counseling and holds a B.A. degree in Psychology, an M.A. degree in Counseling and Guidance, and an Ed.D. in Counseling and Counseling Psychology.  Doc. 45 at 1-2, 7.

During her tenure with the Juvenile Court, Mosley performed a variety of supervisory roles and received several noteworthy appointments and awards.  Doc. 45-1 at 1-4.  She served on the Governor's Advisory Council on Juvenile Justice and the Children's Policy Council.  Id. at 4.  In 2002 she was recognized as the Probation Supervisor of the Year and was named Employee of the Year for Region III of the State of Alabama in 1993.  Id. More recently, she was selected to participate in Leadership Mobile for the Class of 2010.  Id.

Throughout her career, Mosley received "Excellent" and "Outstanding" ratings on her performance evaluations.  Id. at 5.  On her most recent evaluation, performed on October 6, 2009, Larry Harris, the outgoing Chief Juvenile Probation Officer ("CJPO"), rated Mosley "outstanding" (35 out of 35).  Id. at 7.

Mosley alleges the "atmosphere" at the Juvenile Court changed in early 2009, after she complained to Judge Naman about racially insensitive

remarks directed toward her by a white supervisor, Pat Cannedy, at a conference in February 2009.  Id. at 5.  In a written complaint addressed to Judge Naman shortly thereafter, Mosley voiced two complaints.  First, she complained that Cannedy referred to her as a "slave driver."  Doc. 45-7. Second, she complained that Cannedy improperly disclosed the identity of a Juvenile Court Referee and made comments which, in Mosley's opinion, left the group with a negative impression of the Referee.  Id.  Mosley contends that Judge Naman did not acknowledge her written complaint as evidenced by the fact that he appointed Cannedy and other white supervisors to a Leadership Team for the Juvenile Court shortly after receiving Mosley's letter.  Doc. 45-1 at 5.  Cannedy was also appointed to the Probation Reform Team, which was responsible for "completely restructuring and overhauling the entire Probation Department."  Id.  Mosley states that she met with Judge Naman to discuss her concern that the Leadership Team consisted of all white supervisors who, in Mosley's opinion, had less education and experience than she did.  Id.

Several months later, in August 2009, Moseley learned that the CJPO was due to retire, and met with Judge Naman to discuss her interest in the position.  Id. at 5-6.  In late September 2009, the Juvenile Court posted a job vacancy announcement for the newly-vacated CJPO position. [2]  Doc. 40-8 at 14.  Mosley applied, but was not selected.  Doc. 45-1 at 7.  Instead, the

---

[2]  The court refers to Moseley's version of the job vacancy announcement (Doc. 45-5).

Juvenile Court hired Lawrence Battiste, a black male with a Bachelor's degree in human resources management and an extensive law enforcement background.  Doc. 40-2 at 4.

On February 7, 2010, Moseley filed a grievance with the Administrative Office of the Courts ("AOC") alleging that Judge Naman had retaliated against her by refusing to interview her for the CJPO position. Doc. 45-1 at 8.  The next day, she filed a formal complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") (the "2010 EEOC Charge") alleging sex and age discrimination.  Doc. 45-6 at 1.

Additionally, Moseley contends that Naman and Battiste retaliated against her for filing the 2010 EEOC Charge by promoting Cannedy to the position of Deputy Chief Probation Officer without posting public notice of the vacancy; by relocating her office to a less desirable location; by reducing the number of Juvenile Probation Officers she supervised from ten to zero; by adding to her workload; and ultimately informing her on March 31, 2011, that she was being laid off due to administrative restructuring in the Juvenile Court.  Doc. 45-1 at 9-10.

On April 4, 2011, believing that her termination was retaliatory, Mosley filed another EEOC charge against the Juvenile Court ("2011 EEOC Charge") alleging sex and age discrimination and retaliation.  Doc. 45-6 at 2. Additionally, Mosley appealed the layoff decision to the AOC on April 15, 2011.  Doc. 45-8.  In June 2011, the Appeals Board ordered that Mosley be

4

reinstated with benefits and back pay, and placed in a comparable position to the nearest classification to the one that had been abolished as part of the administrative restructuring.  Doc. 40-4 at 1.

On December 21, 2011, the EEOC declined to file suit on Mosley's behalf, but issued her a right to sue letter for her 2010 EEOC Charge.  Doc. 45-4 at 1.  Moseley filed suit on March 13, 2012, but later filed an amended complaint (Doc. 24) on October 24, 2012, after receiving notice of a right to sue with respect to the 2011 EEOC Charge.  Moseley asserts claims for sex-based discrimination and retaliation under Title VII, §1981, and § 1983.  See Doc. 24 at 12-13.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." <u>Anderson,</u> 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See <u>Anderson,</u> 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. <u>O'Ferrell v. United States,</u> 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  <u>Burton v. City of Belle Glade,</u> 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment." <u>Hinesville Bank v. Pony Exp. Courier Corp.,</u> 868 F.2d 1532, 1535 (11th Cir. 1989) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.,</u> 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies her initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Co.,</u> 32 F.3d 520, 524 (11th Cir. 1994)(citing <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a

material issue of fact that precludes summary judgment." Clark v. Coats &
Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may
not rely merely on allegations or denials in its own pleading; rather, its
response .... must be by affidavits or as otherwise provided in this rule be set
out specific facts showing a genuine issue for trial." Vega v. Invsco Group,
Ltd., 2011 WL 2533755, *2 (11th Cir. 2011).  "A mere 'scintilla' of evidence
supporting the [non-moving] party's position will not suffice; there must be
enough of a showing that the jury could reasonably find for that party."
Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).
"[T]he nonmoving party may avail itself of all facts and justifiable inferences
in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d
994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead
a rational trier of fact to find for the non-moving party, there is no genuine
issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475
U.S. 574, 587 (1986) (internal quotation and citation omitted).

### III. LEGAL ANALYSIS

#### A. Claims Against Individual Defendants

Counts Three and Four of Moseley's second amended complaint allege
that the AOC, the Mobile County Juvenile Court, and Judge Naman violated
Moseley's Title VII rights.  Doc. 24 at 12-13.  The defendants argue that
Moseley "cannot maintain an action" against either Naman or Battiste in
their individual capacities because their employer, the AOC, is also a named
defendant.  Doc. 40 at 7-8 (citing Taylor v. Alabama, 95 F.Supp.2d 1297, 1309

(M.D. Ala. 2000)).  This argument is somewhat misplaced.

First, the court notes that Battiste is not named in any of the Title VII counts.  Moseley only brought individual capacity Title VII claims against Judge Naman.  <u>See</u> Doc. 24 at 12-13.  Secondly, Moseley concedes in her opposition brief that she only wants to proceed against Naman and Battiste as individuals under § 1981.  Doc. 45 at 5, 6, 16 n.4.  Thus, although the defendants are correct in that Moseley cannot maintain a Title VII claim against Judge Naman, they are incorrect to argue flatly that she cannot maintain an action against him at all. [3],[4]

Accordingly, the defendants' motion for summary judgment is granted in part with regard to Moseley's Title VII claims against Judge Naman in his individual capacity (Counts Three and Four).  The court will address the remainder of Counts Three and Four, as well as Moseley's § 1981 claims against Judge Naman and Battiste, in greater detail, <u>infra</u>.

**B. § 1983 Claims (Counts One and Two)**

Moseley alleged claims for violation of her due process rights under the 5th and 14th Amendments of the United States Constitution, brought via 42 U.S.C. § 1983.  Doc. 24 at 12 (Counts One and Two).  However, Moseley's opposition to summary judgment contains no mention of these claims.  The

---

[3] The court notes in passing that individual capacity suits under Title VII are inappropriate, generally.  <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir.1991).

[4] The defendants also urge that "any Title VII claims against Judge Naman or Mr. Battiste that are not prohibited would be barred as untimely."  Doc. 40 at 9.  For the reasons stated, <u>supra</u>, the court finds this argument to be moot.

only claims she discussed in her brief relate to her allegations of discrimination and retaliation pursuant to Title VII and §1981.  <u>See</u> Doc. 45. Therefore, Counts One and Two are deemed abandoned, and summary judgment is due to be granted in favor of the defendants on these counts.  <u>See</u> <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1322 (11th Cir. 2001) (holding that a claim included in a complaint but not raised at summary judgment is deemed abandoned).  <u>See also</u> <u>Shamburger v. City of Mobile</u>, 2008 WL 2874363 at *1 (S.D. Ala. 2008) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (<u>citing</u> <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 592 (11th Cir. 1995)).

### C. Discrimination Claims (Counts Three and Five)

#### 1) Statement of the Law

Mosley's discrimination claims are brought pursuant to Title VII and 42 U.S.C. §1981.  Title VII prohibits an employer from discriminating against a person based on a protected factor such as race, color, sex, religion, or national origin.  42 U.S.C. §2000e-2(a)(1).  Likewise, §1981 prohibits intentional discrimination in the making and enforcement of public and private contracts, including employment contracts.  <u>See</u>, <u>e.g.</u>, <u>Johnson v. Railway Express Agency</u>, 421 U.S. 454 (1975) (holding unequivocally that §1981 protects against racial discrimination in private employment).

The test for intentional discrimination in suits under Title VII and §1981 is the same.  <u>Ferrill v. Parker Group</u>, 168 F.3d 468 (11th Cir. 1999). The plaintiff has the burden of establishing a <u>prima facie</u> case of employment

discrimination by a preponderance of the evidence.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  This prima facie case can be established in any one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by presenting circumstantial evidence of discriminatory intent through the McDonnell Douglas test; or (3) by demonstrating through statistics a pattern of discrimination.  Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

Where, as here, the plaintiff wishes to prove a claim of race or sex discrimination through circumstantial rather than direct evidence, the court evaluates the claims using the burden-shifting framework established by the Supreme Court in McDonnell Douglas, 411 U.S. 792.  As stated, supra, under this framework the plaintiff must satisfy the initial burden under the statute by establishing a prima facie case of intentional discrimination.  Smith v. Lockheed-Martin Corporation, 2011 WL 2567777, *2 (11th Cir. 2011).  For claims of race or sex discrimination, the plaintiff must show that (1) she is a member of a protected class (here, female and African-American); (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) her employer treated her less favorably than similarly situated individuals outside of her protected class.  Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).  With respect to this last showing, "the individuals must be similarly situated in all relevant respects besides race, since different treatment of dissimilarly situated

10

persons does not violate civil rights laws." Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1273-1274 (11th Cir. 2004) (internal citations and quotation omitted).

If a plaintiff establishes the prima facie elements of the claim, she raises a presumption that her protected status (i.e., race or sex) motivated her employer to treat her unfavorably. Smith v. Lockheed-Martin Corporation, 644 F.3d 1321, 1325 (11th Cir. 2011) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)). The defendant then has an opportunity to articulate a legitimate, non-discriminatory reason for the challenged employment action as an affirmative defense to liability. Id. This burden of rebuttal is "extremely light." Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1495 (11th Cir. 1995). If the defendant employer meets its burden, then the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and thus disappears. Smith, 644 F.3d at 1325-26.

The plaintiff must then provide evidence that creates a genuine issue of material fact that the defendant's articulated, nondiscriminatory reasons are, instead, a pretext for unlawful race or sex discrimination. See Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks and citation omitted) (plaintiff shows pretext by "demonstrat[ing] that the proffered reason was not the true reason for the employment decision[,]" and by "introduc[ing] significantly probative

evidence . . . that the asserted reason is merely pretext for discrimination.").
An employer's reason is not pretext for discrimination "unless it is shown
both that the reason was false, and that discrimination was the real reason."
Id. at 1163 (emphasis in original) (quoting St. Mary's Honor Ctr. v. Hicks,
509 U.S. 502, 515 (1993)).  As part of the pretext inquiry, the court "must
evaluate whether the plaintiff has demonstrated such weaknesses,
implausibilities, inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action that a reasonable fact
finder could find them unworthy of credence."  Jackson v. State of Ala. State
Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation
marks and citations omitted).  "A plaintiff is not allowed to recast an
employer's proffered nondiscriminatory reasons or substitute his business
judgment for that of the employer. Provided that the proffered reason is one
that might motivate a reasonable employer, an employee must meet that
reason head on and rebut it, and the employee cannot succeed by simply
quarreling with the wisdom of that reason."  Chapman v. AI Transp., 229
F.3d 1012, 1030 (11th Cir. 2000).

### 2) Moseley's **Prima Facie** Case

In order to establish a prima facie case of failure to promote, Mosley
must show that: "(1) she is a member of a protected class, (2) she was
qualified and applied for the promotion, (3) she was rejected despite her
qualifications, and (4) other equally or less qualified employees who were not

members of the protected class were promoted." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004).  Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (citations omitted).

The defendants argue that Mosley cannot establish that she suffered an adverse employment action because the CJPO position for which she applied was statutorily exempted from Title VII's coverage by virtue of the "personal staff exemption" contained in 42 U.S.C. § 2000e(f).  Doc. 40 at 11-13.  This statute states that, for purposes of Title VII, "the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, **or any person chosen by such officer to be on such officer's personal staff,** or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office . . . ."  42 U.S.C. § 2000e(f) (emphasis added).  Unsurprisingly, Moseley disputes that the CJPO position falls within this exemption.  Doc. 45 at 11-12.

"[A] plaintiff's status as an employee under Title VII is a question of federal, rather than of state, law; it is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." E.E.O.C. v. Reno, 758 F.2d 581, 584 (11th Cir. 1985).  However, "state law is relevant

only so far as it describes the Title VII plaintiff's position, including duties and supervision." Clark v. Tarrant Cty, Tex., 798 F.2d 736, 742 (5th Cir. 1986). The relevant factors pertinent to determining whether an employee falls within the Title VII personal staff exemption are: (1) whether the elected official has plenary powers of appointment and removal, (2) whether the employee is personally accountable only to that elected official, (3) whether the person represents the elected official in the eyes of the public, (4) whether the elected official exercises considerable control over the position, (5) the level of the position in the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the employee. Laurie v. Alabama Court of Criminal Appeals, 88 F.Supp.2d 1334, 1338 (M.D. Ala. 2000) (citing Teneyuca v. Bexar County, 767 F.2d 148, 151 (5th Cir. 1985)).

Construing the facts in the light most favorable to Moseley, the court cannot find as a matter of law that the CJPO is a member of Judge Naman's personal staff. In support of their motion, the defendants attach copies of the Alabama state statutes, which they contend statutorily determine several of the Teneyuca factors. Doc. 40-8. However, there is no evidence before the court proving the intimate work relationship required under Teneyuca, other than the defendants' passing statement that the CJPO "works intimately with the Judge on an almost daily basis." Doc. 50 at 7. Similarly, while the Alabama state statute does designate the person holding CJPO position as

serving "at the pleasure of the appointing juvenile court judge," Ala. Code 12-5A-8(3), without more, the Court cannot be sure whether the CJPO is accountable only to the juvenile court judge, and thus cannot determine whether the second Teneyuca factor is satisfied.  As for the fourth Teneyuca factor, there is minimal evidence that the juvenile judge exercises "considerable" control over the position; indeed the statute suggests the juvenile court, and not the judge, directs the CJPO.  Id. (indicating that the CJPO shall administer juvenile probation services "under the direction of the juvenile court.")  Moseley has also raised a dispute as to whether the CJPO position is the same position as described in the statute.  Doc. 51 at 6.  Additionally, the job announcement cited by the defendants states that the position requires the employee to "exercise considerable initiative, judgment and independent decision-making," which weighs against the position being one afforded "personal staff" status.  Doc. 41-1 at 1.  Based on the present record, the defendants have not presented sufficient evidence for the court to find as a matter of law that the CJPO position falls within the "personal staff" exception of Title VII.  Accordingly, the defendants are not entitled to summary judgment based upon the "personal staff" exception.

Moseley has satisfied the remaining elements of a prima facie case of sex discrimination.  Having served as a Juvenile Probation Officer for over 37 years, with multiple advanced degrees, including an Ed.D. in counseling, it is undisputed that Moseley was qualified for the position.  Doc. 45-1 at 1.  It is

also undisputed that she applied and was rejected for the position.  Id. at 7.
Finally, Judge Naman ultimately appointed Battiste, a man outside of
Moseley's protected class who had less relevant education and less experience
than Moseley, to fill the position.  Id.

Although the second amended complaint makes oblique references to
racial discrimination, Moseley did not present any such argument in her
opposition to summary judgment.  Therefore, the court finds that Moseley
has abandoned this claim.  Shamburger v. City of Mobile, 2008 WL 2874363
at *1 (S.D. Ala. 2008) ("grounds alleged in the complaint but not relied upon
in summary judgment are deemed abandoned.") (citing Resolution Trust
Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995)).  Even if the court
did not deem Moseley's race discrimination claim to be abandoned, it would
find that she cannot establish a prima facie case of race discrimination
because she cannot show that Judge Naman, the AOC, or the Juvenile Court
treated similarly-situated workers outside of her protected class.  Battiste,
who was hired as the new CJPO, is African-American, and obviously not
outside of Moseley's protected class for purposes of her race discrimination
allegations.

### 3) The Defendants' Legitimate and Nondiscriminatory Reasons

The defendants argue that Battiste was selected due to a number of
factors, including: "his administrative and management background; his
willingness to follow the Judge's direction concerning needed changes in the
program, and his understanding and abilities to relate with, and oversee and

16

manage other employees." Doc. 40-6 at 1. This is a perfectly legitimate, non-discriminatory reason for having hiring Battiste over Moseley. Therefore, the court finds the defendants have satisfied their light burden of rebuttal. See Tipton, 872 F.2d at 1495. Accordingly, the burden now shifts to Moseley to demonstrate that these reasons were merely pretext for sex discrimination.

### 4) Pretext

As evidence of pretext, Moseley claims that the former CJPO "made it clear" that Judge Naman was doing "whatever he could do" to avoid giving the CJPO position to Mosley. Doc. 45-1 at 8. She also states that she had been warned by two unidentified white juvenile probation officers, on separate occasions, "to be careful because 'there was a target on [her] back.'" Id. Neither of these hearsay statements are admissible because Moseley has not established that either the former CJPO nor the two juvenile probation officers had personal knowledge of Judge Naman's intentions. See id. To be considered on summary judgment, affidavits or declarations must be based on personal knowledge, cannot be conclusory, and must contain information that can be reduced to admissible form at trial. See, e.g., Corwin v. Walt Disney Co., 475 F.3d 1239, 1249 (11th Cir. 2007) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge."); Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."); Leigh v. Warner

Bros., Inc., 212 F.3d 1210 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.") (citation omitted).

As further evidence of pretext, Moseley also claims that a white male probation officer, Kenneth Brutkiewicz, told Mosley that Judge Naman had introduced Cannedy to a local group as his next CJPO. Id. at 5-6. This statement is rank hearsay, and Moseley has not identified a hearsay exception which would make the statement otherwise admissible. Macuba v. DeBoer, 193 F.3d 1316, 1322-24 (11th Cir. 1999) (discussing proper application of hearsay rule to motions for summary judgment). Furthermore, even if Brutkiewicz's statement were admissible, it does not tend to prove pretext because it tends to show that Judge Naman was open to the possibility of hiring a woman, thus undermining Moseley's assertion of sex discrimination.

Mosley further argues that her experience, lack of a disciplinary record, and high evaluations establish that the defendants' proffered non-discriminatory reasons are pretextual. Doc. 45 at 16. The court disagrees. Courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) (citing Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181,

1187 (11th Cir. 1984)).  The fact that the defendants cited Battiste's experience as the Chief of Police in Prichard and as a Lieutenant in the Mobile County Sheriff's office is consistent with the defendants' assertion that the new CJPO would be required to perform extensive managerial and administrative duties.[5]  Simply pointing out Moseley's own credentials, as impressive as they are, does not by itself rebut the defendants' non-discriminatory reason.  Therefore, the court concludes that Mosley has failed to show that the disparities between her qualifications and Battiste's were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  Brooks, 446 F.3d at 1163.

Accordingly, the court finds that the defendants' motion for summary judgment is due to be granted as to Moseley's Title VII failure to promote claim (Counts Three) and her remaining allegations of sex and race discrimination (Title Five).

### D. Retaliation Claims (Counts Four and Five)

#### 1) Statement of the Law

As with discrimination claims, a Title VII retaliation claim based on circumstantial evidence is analyzed according to the McDonnell Douglas

---

[5] Plaintiff disputes the job vacancy announcement offered by defendants, (Doc. 40-1 at 1-2) and submits an announcement she claims was the actual advertisement (Doc. 45-5 at 2).  Both postings are identical for the most part. Because Moseley is the non-movant, the court must resolve questions of fact in her favor and therefore refers to her job vacancy announcement.  (Doc. 45-4).

framework.  See McDonnell Douglas Corp., 411 U.S. at 802-04; Farley v.

Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999) (applying

McDonnell Douglas-type analysis to retaliation claims).  The plaintiff bears

the initial burden of establishing a prima facie case of retaliation, which she

may do by demonstrating that (1) she engaged in statutorily-protected

activity; (2) she suffered a materially adverse employment action; and (3)

there was some causal relation between these two events.  Dixon v. The

Hallmark Companies, Inc., 627 F.3d 849 (11th Cir. 2010).  The Eleventh

Circuit construes the "causal link" element broadly, so as "to require merely

that the plaintiff establish that the protected activity and the adverse action

were not wholly unrelated."  Goldsmith v. Bagby Elevator Co., Inc. 513 F.3d

1261, 1286 (11th Cir. 2008) (quoting Simmons v. Camden County Bd. of

Educ., 757 F.2d 1187, 1189 (11th Cir. 1985)).

     Once a plaintiff has established the prima facie elements of the claim,

the defendant has an opportunity to articulate a legitimate, nonretaliatory

reason for the challenged employment action as an affirmative defense to

liability.  Smith v. Lockheed-Martin Corporation, 2011 WL 2567777, *2 (11th

Cir. 2011).  The plaintiff must then prove by a preponderance of the evidence

that the reason provided by the employer is a pretext for prohibited

retaliatory conduct.  Id.  However, " 'a plaintiff employee may not establish

that an employer's proffered reason is pretextual merely by questioning the

wisdom of the employer's reason' as long as 'the reason is one that might

motivate a reasonable employer.' " Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) (citation omitted). Furthermore, as the Supreme Court has held, a reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (emphasis in original); accord Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race.") (citations and internal quotation marks omitted).  In the context of a promotion, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." Id. (additional citations and quotation omitted).

### 2) **Prima Facie** Case

Plaintiff's retaliation claims stem from several incidents, including (1) not being promoted to the CJPO position in retaliation for lodging complaints of perceived racial discrimination; (2) the alleged denial of an opportunity to compete for the unadvertised position of Deputy Chief Probation Officer; (3) Moseley's alleged demotion and reduction in work duties; and (4) Moseley's alleged termination.  Doc. 45 at 6, 16.  The court addresses each allegation in turn.

First, Moseley contends that she was passed over for promotion to the

CJPO position in retaliation for numerous informal complaints of discrimination she made.  Id. at 6.  Moseley's affidavit supports her claim that she complained about perceived racial discrimination, including a written complaint against Cannedy for making allegedly racially insensitive remarks as well as the appointment of an all-white Probation Reform Team.  Doc. 45-1 at 5.  Complaints of discrimination directed to one's supervisor certainly qualify as protected expression.  Rollins v. Florida Dep't of Law Enforcement, 868 F.2d 397, 400 (11th Cir.1989) (internal complaints of discrimination are statutorily protected conduct).  Furthermore, it is undisputed that Moseley was passed over for the CJPO position four to six weeks later.  Doc. 45 at 9.  This constitutes an adverse employment action within close temporal proximity to Moseley's complaints of discrimination.  See Gupta v. Florida Board of Regents, 212 F.3d 571, 587 (11th Cir. 2000) abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  Therefore, the court finds that Moseley has established a prima facie case of retaliation against the AOC and the Mobile County Juvenile Court with regard to her not being hired for the CJPO position.

The same cannot be said for Moseley's allegation that she was denied the opportunity to compete for the newly created position of Deputy Chief Probation officer.  This allegation is devoid of any citation to evidence which would support the claim.  See Doc. 45 at 17; Doc. 45-1 at 9.  See also Pace v. Capobianco, 283 F.3d 1275, 1278-79 (11th Cir. 2002); Leigh v. Warner Bros.,

<u>Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000) ( "This court has consistently held that conclusory allegations without specific supporting facts have no probative value").  Accordingly, the court finds that Moseley has failed to establish a <u>prima</u> <u>facie</u> case regarding this allegation.

Moseley has also failed to establish that her allegations of demotion and reduction in work duties constitute adverse employment actions.  For one thing, Moseley has not alleged that she suffered a decrease in pay or benefits; therefore, her use of the term "demotion" to describe her situation is more editorial than objective.  <u>See</u> Doc. 45; Doc. 45-1.  Furthermore, while Moseley contends the number of probation officers she supervised was reduced from ten to zero, she has cited no case law to support the notion that this constitutes an adverse employment action.  Doc. 45 at 19.  In fact, the Eleventh Circuit has stated that "courts have been reluctant to hold that changes in job duties amount to adverse employment action[s] when unaccompanied by any tangible harm such as a reduction in salary.  <u>Davis v. Town of Lake Park, Florida</u>, 245 F.3d 1232, 1244 (11th Cir. 2001).

Lastly, Plaintiff's claim that she was terminated in retaliation for filing the 2010 EEOC complaint is unsupported by any evidence suggesting a causal connection.  Doc. 45 at 19.  In fact, this portion of Moseley's opposition brief is almost totally devoid of citations to the record.  <u>Id.</u>  The one piece of record evidence to which Moseley did point is her own April 15, 2011, letter to the AOC, in which she characterizes her lay off as retaliation.  Doc. 45-8.  But

23

this conclusory statement has no probative value.  See Pace, 283 F.3d at 1278-79; see also Leigh, 212 F.3d at 1217.  Furthermore, Moseley was informed of her "lay off" March 31, 2011 -- almost 14 months after she filed her the 2010 EEOC Charge (dated February 8, 2010).  Doc. 45-1 at 10.  This period of time is too remote to satisfy Moseley's burden of causation based upon temporal proximity, alone.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.") (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

Accordingly, the court finds that the only retaliation claim for which Moseley has established a prima facie case is her allegation that she was not promoted to the CJPO position in retaliation for her numerous informal complaints of discrimination.  Doc. 45 at 6.  The defendants' summary judgment motion is due to be granted with regard to the remaining retaliation allegations.

**3) The Defendants' Legitimate, Non-Retaliatory Reasons**

The defendants argue that Battiste was selected for the CJPO position because Judge Naman was "particularly impressed with the extensive administrative and management experience that Mr. Battiste held that far exceeded any other applicants."  Doc. 40 at 15.  The defendants argue further that Battiste's experience was significant to Judge Naman because the CJPO

"is required to perform extensive managerial and administrative duties pursuant to the direct instructions of the judge." Id. at 15-16. This is a legitimate, non-discriminatory reason for hiring Battiste over Moseley. Therefore, the court finds the defendants have satisfied their light burden of rebuttal. See Tipton, 872 F.2d at 1495. Thus, the burden now shifts to Moseley to demonstrate that these reasons were merely pretext for retaliation.

### 4) Pretext

Moseley argues that the defendants' proffered non-retaliatory reasons are pretextual because she has superior professional credentials and experience in working with juvenile offenders. Doc. 45 at 12-13. Citing only Battiste's resume and application, she argues that Battiste "cannot point to any experience working with juveniles or counseling such individuals," and argues further that "[Battiste's] resume and application do not reflect **any**, much less 'considerable knowledge' or experience in counseling, juvenile probationary activities, or social and psychological forces relating to juvenile delinquency." Id. at 13 (emphasis in original).

Instead of pointing to additional record evidence to support her argument, Moseley engages in rank speculation, arguing without citation that given the disparity in experience, the human resources professionals on the CJPO search committee "had to have been forewarned about Defendant Naman's preference for the job," and asserting (again, without citing facts in

the record) that "it was predetermined that Moseley would not be referred for an interview." Id. But the disparity between Battiste's and Moseley's education and experience alone do not support this conclusion. At best, Moseley's argument suggests that Judge Naman may have made a bad employment decision, which does not establish pretext. Judge Naman was entitled to hire Battiste over Moseley for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a [retaliatory] reason." Nix v. WLCY Radio/Rahall Comm's, 738 F.2d 1181, 1187 (11th Cir. 1984). Without more, Moseley's pretext argument falls short.

Accordingly, the court finds that summary judgment is due to be granted with regard to Moseley's retaliation claims (Counts Four and Five).

## IV. CONCLUSION

The defendants' motion for summary judgment is **GRANTED** as to all counts.

**DONE** and **ORDERED** this 9th day of May, 2013.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE