IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LINDA JOHNSON-MOSELY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 12-0184-CG-N** |
| | ) | |
| **ALABAMA UNIFIED JUDICIAL** | ) | |
| **SYSTEM, ADMINISTRATIVE** | ) | |
| **OFFICE OF THE COURTS; THE** | ) | |
| **JUVENILE COURT OF MOBILE** | ) | |
| **COUNTY, ALABAMA; THE HON.** | ) | |
| **EDMOND NAMAN; and LAWRENCE** | ) | |
| **BATTISTE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the court on Defendants' renewed motion for summary judgment, Plaintiff's response and Defendants' reply (Docs. 76, 83, 93); Plaintiff's motion to strike witness affidavits, Defendants' objection and Plaintiff's reply (Docs. 80, 90, 94); Plaintiff's motion to strike renewed motion for summary judgment as to Counts I and II, Defendants' objection and Plaintiff's reply (Docs. 81, 91, 94); and Plaintiff's motion to strike portions of Judge Naman's affidavit and Defendants' objection (Docs. 82, 92). For the reasons stated below, the court finds that Plaintiff's motions to strike should be denied and that Defendants' motion for summary judgment should be granted.

## I. Motions to Strike

### A. Affidavits of Vonda Sanders and Larry Harris

Plaintiff moves to strike the affidavits of Vonda Sanders (Doc. 77-2) and Larry Harris (Doc. 77-1) on the basis that these individuals were not listed in Defendants' initial disclosures as required by Federal Rule 26(a)(1) and this court's Rule 16(b) Scheduling Order (Doc. 21). Plaintiff argues that she did not have notice that these individuals were likely to have discoverable information that the defendants would use to support their defenses, and they were never otherwise mentioned as potential witnesses. Defendants respond that they have been unable to find a copy of their initial disclosures, but contend that Plaintiff has been aware of these potential witnesses throughout the litigation. Defendants point out that both witnesses are named in the fact section of Plaintiff's amended complaint and Harris was also named in Plaintiff's original complaint. (Doc. 1, ¶ 15; Doc. 24 ¶¶ 13, 27). Plaintiff also submitted exhibits in response to the original summary judgment motion as well as to the current summary judgment motion that mention these witnesses and their involvement in this matter. (eg. Doc. 45-9; Doc. 83-1, ¶¶ 2, 9, 11, 12, 16, 27, 30, 33, 43, 72). Additionally, both witnesses were listed as witnesses in the May 8, 2013, joint pretrial document, with Harris being listed as a potential witness for the plaintiff. (Doc. 56, pp. 33-35). The joint pretrial document also stated "Defendants reserve the right to call any and all witnesses called by the plaintiff." (Doc. 56, p. 35). At no time did Plaintiff object to Defendants' witness list. Plaintiff still lists Harris

as a witness in the current joint pretrial document, filed on July 22, 2014. (Doc. 95, pp. 37-38). Defendants also list Sanders as a witness in the current joint pretrial document and there is no indication in that document that the Plaintiff objected to her inclusion. (Doc. 95, pp. 37-38).

Moreover, it is abundantly clear to the court that the plaintiff had to be aware of the names and roles of the individuals on the screening committee since she was interviewed by that committee, and that she knew when she filed this lawsuit that the process and considerations of the committee would be relevant to the issues in the case.

Rule 26(e) places upon litigants an obligation to supplement in a timely manner incomplete or incorrect disclosures "if the additional or correct information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). If a party fails to discharge the said obligation, that party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c). Although no party has provided a copy of the initial disclosures, the Court will presume that these individuals were not listed by the defendants. However, Plaintiff clearly was aware that both Harris and Sanders were potential witnesses even before she filed her complaint. Additionally, she was on notice by at least May 8, 2013, the date of the first joint pretrial document, that the defendants might call Harris and Sanders as witnesses at trial. While the pretrial document was filed after the close of discovery,

Plaintiff did not object to their inclusion as witnesses and had, in fact, proffered Harris as her own witness. The Rule 16(b) Scheduling Order entered in this case expressly states the following:

> Any objection to the designation of a witness (whether lay or expert) shall be submitted with the Joint Pretrial Document. **Failure to comply shall constitute a waiver of any such objection.**

(Doc. 21-1, p. 4, ¶ H (emphasis in original)). Under the circumstances, the court finds that these witnesses were known to the parties during discovery and that even if defendants should have supplemented their disclosures, the error was harmless. Knowing the role these potential witnesses played in the case, Plaintiff chose not to obtain discovery information from them. In addition, the plaintiff has waived any objection to the designation of Harris or Sanders as witnesses. Accordingly, Plaintiff's motion to strike the affidavits of Vonda Sanders and Larry Harris is denied.

### B. Counts I and II of Renewed Motion for Summary Judgment

Plaintiff moves to strike defendants' motion as to Counts I and II because she argues that these counts were not addressed in the defendants' first motion for summary judgment, and nothing new has developed in the record of this case, such as additional discovery, that would allow Defendants another opportunity to move for summary judgment. Plaintiff is correct that successive motions for summary judgment are disfavored, see Allstate Finance Corp. v. Zimmerman, 296 F.2d 797, 799 (5th Cir.1961), but a district court has discretion to allow successive motions. See Enlow v. Tishomingo County, Miss., 962 F.2d 501, 507 (5th Cir.1992). This

Court "has broad discretion in controlling its own docket" and is even free to "reconsider a previously denied summary judgment motion even in the absence of new material presented." Enlow, 962 F.2d at 501 n.16) (citations omitted). After receiving the mandate from the Eleventh Circuit, this Court gave defendant permission to file a second motion for summary judgment without limiting the scope of any such motion. (Doc. 73). Plaintiff sought clarification of the Order granting the right to file a second motion for summary judgment, requesting that Plaintiff be allowed to file a motion for summary judgment as well, (Doc 73), which the Court also granted. (Doc. 74). Defendants filed their motion timely. Plaintiff did not file a motion for summary judgment. Plaintiff has not presented any authority to demonstrate that the Court's order permitting the motion was in error. Accordingly, plaintiff's motion to strike the renewed motion for summary judgment as to Counts I and II is denied.

### C. Portion of Judge Naman's Affidavit

Plaintiff moves to strike portions of Judge Naman's affidavit as hearsay. The Federal Rules of Evidence define "hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). The Court notes that even if the statements are found to be hearsay, the Court may consider hearsay at the summary judgment stage "if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" Macuba v. Deboer, 193 F.3d 1316, 1323 (11th Cir.1999) (collecting cases).

The statements at issue here were made to Judge Naman (1) by consultants Tim Roche and Stu Berry about concerns they had about plaintiff and (2) by Karen Trussell describing her impression or understanding of an exchange that occurred between Plaintiff and another employee, Pat Cannedy. (Doc. 77-3, ¶¶ 9-10). The court finds that such statements are not hearsay because they are not offered for the truth of the matter asserted, but to show Judge Naman's mindset or understanding. Whether Roche, Berry and Trussel were truthful in their statements or what precise wording was used is immaterial. What is at issue is whether Judge Naman understood or believed that such comments had been made and acted or based his decisions, at least in part, on his understanding of those comments. It is Judge Naman's perception of what he believes he was told and how that contributed to his evaluation of the plaintiff that is important in this matter. Accordingly, plaintiff's motion to strike portions of Judge Naman's affidavit is denied.

## II. Motion for Summary Judgment

### A. Background

This Court previously entered summary judgment in favor of Defendants on all counts. (Doc. 58). Plaintiff appealed, and the Eleventh Circuit affirmed in part and vacated and remanded in part. (Doc. 70). The Eleventh Circuit concluded that Defendants had failed to sufficiently raise in their motion for summary judgment a challenge to Plaintiff's due process and equal protection claims asserted in Counts I and II. (Doc. 70, p. 6). Accordingly the judgment on those Counts was vacated, and

they were remanded for consideration by this Court. Additionally, the Eleventh Circuit found that, with regard to Plaintiff's Title VII gender discrimination claim for failure to promote/hire to the Chief Judicial Probation Officer (CJPO) vacancy (asserted in Count III), and Plaintiff's § 1981 claim of retaliation in relation to the CJPO vacancy (asserted in Count V), defendants had not sufficiently stated a legitimate nondiscriminatory reason for their decisions. (Doc. 70, pp. 10-12, 15). Specifically, the Court of Appeals found that because Judge Naman selected Battiste from a group of applicants recommended by the screening committee, and Plaintiff was not among that group, Judge "Naman never had an opportunity to actively compare Mosley's qualifications to those of Battiste." (Doc. 70, p. 11). Accordingly, Judge Naman's conclusion that Battiste had superior qualifications could not serve as a legitimate nondiscriminatory reason to rebut Plaintiff's <u>prima facie</u> case. (Doc. 70, pp. 11-12). The Appeals Court further stated:

> "Had the Defendants presented evidence regarding why the screening committee recommended Battiste to Judge Naman, while declining to advance Mosley, such evidence of an active comparison between the two candidates may have served as a sufficient, legitimate, nondiscriminatory reason. <u>See</u> <u>Joshi</u>, 763 F.2d at 1235. However, the record is silent as to the screening committee's reasons for advancing Battiste over Mosley during this portion of the hiring process.

(Doc. 70, p 12 n. 6). Defendants now move for summary judgment as to all of the remaining claims. Because this is the defendants' second motion for summary judgment and the parties have limited their arguments to particular aspects of the case, the Court finds it unnecessary to restate the detailed facts of the case. To the

extent they are relevant, the Court will address the facts in conjunction with the arguments discussed below.

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the Court must view all evidence in the light most favorable to the non-moving party,

and resolve all reasonable doubts about the facts in its favor. <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." <u>Miranda v. B&B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Company</u>, 32 F.3d 520, 524 (11th Cir. 1994)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." <u>Vega v. Invsco Group, Ltd.</u>, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992). "Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

### C. Discussion

#### 1. Counts I and II

Defendants first contend that they are entitled to Eleventh Amendment immunity from damages on Counts I and II. Absent abrogation or waiver, the Eleventh Amendment of the United States Constitution bars federal claims for damages against the states, including suits brought by a state's own citizens. <u>Hans v. Louisiana</u>, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). "The State of Alabama, its agencies, and its officials acting in their official capacity are not considered 'persons' for purposes of an action for damages under 42 U.S.C. § 1983. <u>State Dep't of Pub. Safety v. Sexton</u>, 748 So.2d 200 (Ala. Civ. App. 1998) (citing <u>Hafer v. Melo</u>, 502 U.S. 21 (1991)).

Defendants also contend that Judge Naman and Mr. Battiste are protected by qualified immunity. "Qualified immunity protects government officials performing discretionary functions from civil trials . . . and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Lassiter v. Alabama A & M Univ.</u>, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (internal quotations and citations omitted).

To receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). In the instant case, the defendants were clearly working within the scope of their discretionary authority. The burden then shifts to the plaintiff to demonstrate that the official's actions violated a clearly established right. Grayden v. Rhodes, 345 F.3d 1225, 1231 (11th Cir. 2003). This can be broken down into a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, show the defendants' conduct violated the plaintiff's rights; and (2) whether those rights were clearly established at the time of the alleged deprivation. Id.

In Count I, Plaintiff asserts a due process claim against Judge Naman and Battiste relating to when she was laid off in April 2011. In Count II, Plaintiff asserts an equal protection claim of discriminatory layoff and failure to rehire.

To the extent Plaintiff asserts Count II against AOC, the claim fails because there is no evidence that AOC knew of, sanctioned, participated in, or was otherwise "affirmatively linked" to the acts plaintiff complains of, and respondeat superior is not available to a plaintiff under § 1983. Gilmere v. City of Atlanta, Ga., 774 F.2d 1495 (11th Cir. 1985) cert. denied. 476 U.S. 1115 (1986); Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)); Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).

Defendants argue that all persons were treated equally and constitutional due process was followed and thus, that they have not violated Plaintiff's clearly established rights. As to Count I, Defendants assert that there is no evidence that Battiste was involved in the ultimate decision to layoff the plaintiff and that plaintiff was afforded due process. As to Count II, Defendants assert that Plaintiff has not shown that she was treated differently from similarly situated employees in either her layoff or her rehire.

The only argument or evidence plaintiff has offered relating to Counts I and II are contained in her motion to strike, which the Court denied, above. Plaintiff has failed to offer any argument or evidence regarding the merits of her Due Process and Equal Protection claim. "In opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid judgment against him.'" Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995)(citing Ryan v. Int'l Union of Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11 Cir. 1986)). Moreover, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Id. at 599 (citations omitted). Accordingly, the Court finds that summary judgment is due to be granted in favor of Defendants on Counts I and II.

## 2. Count III

The remaining claim asserted in Count III consists of a Title VII gender discrimination claim against AOC, for failure to promote/hire to the CJPO vacancy. Title VII prohibits an employer from discriminating against a person based on a protected factor such as race, color, sex, religion, or national origin. 42 U.S.C. §2000e-2(a)(1). The plaintiff has the burden of establishing a prima facie case of employment discrimination by a preponderance of the evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This prima facie case can be established in any one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by presenting circumstantial evidence of discriminatory intent through the McDonnell Douglas test; or (3) by demonstrating through statistics a pattern of discrimination. Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

Where, as here, the plaintiff wishes to prove a claim of sex discrimination through circumstantial rather than direct evidence, the Court evaluates the claim using the burden-shifting framework established by the Supreme Court in McDonnell Douglas, 411 U.S. 792. Under this framework, the plaintiff must satisfy the initial burden under the statute by establishing a prima facie case of intentional discrimination. Smith v. Lockheed-Martin Corporation, 2011 WL 2567777, *2 (11th Cir. 2011). For claims of sex discrimination, the plaintiff must show that (1) she is a member of a protected class (here, female); (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) her employer treated her less favorably than similarly situated individuals outside of her protected class.

Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).

With respect to this last showing, "the individuals must be similarly situated in all

relevant respects besides [sex], since different treatment of dissimilarly situated

persons does not violate civil rights laws." Jackson v. BellSouth

Telecommunications, 372 F.3d 1250, 1273-1274 (11th Cir. 2004) (internal citations

and quotation omitted). In the instant case, for the purposes of this summary

judgment motion, there appears to be no dispute that Plaintiff has established a

prima facie case of discrimination.

By establishing the prima facie elements of the claim, Plaintiff raises a

presumption that her protected status (i.e her sex) motivated her employer to treat

her unfavorably. Smith v. Lockheed-Martin Corporation, 644 F.3d 1321, 1325 (11th

Cir. 2011) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).

Accordingly, the burden shifts to the defendant to articulate a legitimate, non-

discriminatory reason for the challenged employment action. Id. This burden of

rebuttal is "extremely light." Tipton v. Canadian Imperial Bank of Commerce, 872

F.2d 1491, 1495 (11th Cir. 1995). If the defendant employer meets its burden, then

the presumption of discrimination raised by the plaintiff's prima facie case is

rebutted and thus disappears. Smith, 644 F.3d at 1325-26.

The plaintiff must then provide evidence that creates a genuine issue of

material fact that the defendant's articulated, nondiscriminatory reasons are,

instead, a pretext for unlawful sex discrimination. See Brooks v. County Comm'n of

Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006) (plaintiff shows pretext by

14

"demonstrat[ing] that the proffered reason was not the true reason for the employment decision[,]" and by "introduc[ing] significantly probative evidence . . . that the asserted reason is merely pretext for discrimination." (internal quotation marks and citation omitted)).  An employer's reason is not pretext for discrimination "unless it is shown *both* that the reason was false, and that discrimination was the real reason." Id. at 1163 (emphasis in original) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).  As part of the pretext inquiry, the court "must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks and citations omitted).  "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000).

In the instant case, the CJPO position sought by the plaintiff was awarded to Lawrence Battiste, who was one of three candidates recommended by a screening committee. The Eleventh Circuit found that Defendants had not sufficiently stated a legitimate nondiscriminatory reason in their original motion for summary judgment

because they had not provide a sufficient nondiscriminatory reason why the plaintiff was not recommended by the screening committee. The Eleventh Circuit noted that "an active comparison between the two candidates may have served as a sufficient, legitimate, nondiscriminatory reason." (Doc. 70, p. 12 n. 6). In light of the Eleventh Circuit's opinion, defendants have focused their renewed motion on their contention that the screening committee had legitimate nondiscriminatory reasons for recommending Battiste over the plaintiff.

Defendants contend that the qualifications sought by Judge Naman for the new CJPO had been made clear to the selection committee and that the selection committee found Battiste to be far more qualified for the CJPO position. Vonda Sanders, the former Assistant Director of Human Resources for AOC, served on the selection committee. (Doc. 77-2, ¶ 4). Ms. Sanders understood that Judge Naman could have appointed a CJPO, but instead devised the selection committee in an effort to appoint the best qualified applicant for the CJPO position in order to move the Mobile County Juvenile Court forward in the most positive and efficient manner. (Doc. 77-2, ¶¶ 4, 5). The committee interviewed all seventeen applicants for the position because they all met the minimum qualifications for the position. (Doc. 77-2, ¶ 6). Sanders was most impressed by applicants Rhoda Kimble, Lawrence Battiste, and Shannon Shelly-Tremblay. (Doc. 77-2, ¶ 6). "These applicants particularly had a vision of the role of the CJPO position and possessed experience to move the Mobile County Juvenile Court forward in the direction Judge Naman had communicated." (Doc. 77-2, ¶ 6). During plaintiff's interview, Sanders did not get the impression

16

that the plaintiff was the best fit for the CJPO position because "she constantly spoke about how things used to be in the past and how she would implement some of the old programs that used to exist." (Doc. 77-2, ¶ 7). According to Sanders, Mr. Battiste, Ms. Tremblay, and Ms. Kimble all met the minimum qualifications and exhibited the appropriate experience and attitude that would make them a proper fit for the CJPO position. (Doc. 77-2, ¶8).

Larry Harris, the former CJPO, also served on the selection committee. Harris states that they knew what Judge Naman was looking for in a new CJPO, but he had not established strict criteria for screening the candidates. (Doc. 77-1, ¶ 6). Harris knew that Judge Naman "wanted to develop new programs [to] revitalize the activities of our Court, work with other agencies, and reach out to the community to truly assist the juveniles and families in the area." (Doc. 77-1, ¶ 8). During Harris' tenure as CJPO, he was very busy and they had made a lot of progress, for example Naman revitalized the local Children's Policy program, a state-sponsored initiative that had languished under the previous administration. (Doc. 77-1, ¶ 8). Harris did not think Plaintiff's interview went well. (Doc. 77-1, ¶ 7). Harris described Plaintiff's interview as follows:

> Even though she had served under Judge Naman's supervision for three years, she stated that she thought the Court should return to old ways of doing things as when Judge Strickland was presiding judge in the seventies and eighties of the juvenile court of Mobile County. She even mentioned Judge Strickland's name when talking about this. She seemed to not want to move forward into the future as Judge Naman wanted the Court to do.

(Doc. 77-1, ¶ 7).

Defendants contend that the above testimony of Sanders and Harris sufficiently establishes a legitimate, nondiscriminatory reason for the committee's decision not to recommend the plaintiff for the CJPO position.[1]  Plaintiff disagrees and attempts to discredit the testimony as vague and subjective.  However, "[s]ubjective reasons can be just as valid as objective reasons." Chapman v. AI Transport, 229 F.3d 1012, 1033 (11th Cir. 2000).  Whether subjective or objective, the reasons must be clear and reasonably specific so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." Id. at 1034.  The Court finds Defendants' reasons are sufficiently clear and specific.  While Sanders and Harris offer mostly general conclusions of their impressions of the candidates, they also offer more specific factual bases to explain their statements.  Sanders reports that plaintiff "constantly spoke about how things used to be in the past and how she would implement some of the old programs that used to exist."  Harris offers that the plaintiff "stated that she thought the Court should return to old ways of doing things as when Judge Strickland was presiding judge in the seventies and eighties." As stated above, the defendants' burden of establishing a legitimate nondiscriminatory reason is "extremely light." Tipton, 872 F.2d at 1495.  The Court

_____

[1] Due to the history of this case, the parties' arguments as to Count III are focused almost exclusively on the committee's decision to recommend three candidates, in particular Battiste, and to not recommend the plaintiff.  As to Naman's decision to hire Battiste after he was recommended by the committee, the Court reiterates its previous conclusions in the original summary judgment Order: (1) that Defendants provided legitimate nondiscriminatory reasons for Naman's decision to hire Battiste over Plaintiff, and (2) that Plaintiff has not shown pretext. (Doc. 58, pp. 16-19).

finds that Defendants have met that burden and that the presumption of discrimination raised by the plaintiff's <u>prima</u> <u>facie</u> case is rebutted, and thus disappears.

Therefore, the Court turns to Plaintiff's contention that the articulated nondiscriminatory reasons are merely pretext for unlawful sex discrimination. Plaintiff contends that the screening committee and Defendants' reasons should not be believed because they are vague and subjective and because Plaintiff was more qualified. Plaintiff argues that this Circuit has often condemned such practices as using unpublicized, subjective criteria for hiring or promotions, because they are "ready conduits to race-based decisions". However, the cases cited by Plaintiff do not refer simply to an employer's subjective reasons (which, as indicated above, can be as valid as objective reasons), but concerned circumstances where the hiring or promotion process was wholly devoid of structure or objective criteria. Where there is an informal or secretive system of appointment, with no advertising or posting of the position, no formal application procedures and personnel choices heavily influenced by subjective factors, the results may be suspect. <u>See</u> <u>Stallworth v. Shuler</u>, 777 F.2d 1431, 1434 (11th Cir. 1985); <u>Roberts v. Gadsden Mem. Hosp.</u>, 835 F.2d 793, 798 (11th Cir.), *modified*, 850 F.2d 1549 (11th Cir. 1988). In these cited cases, it was the entire process of hiring or promoting that was informal or secretive and tended to facilitate the consideration of impermissible criteria. In Plaintiff's case, the process was not informal or secretive. Potential candidates were given the opportunity to respond to the formally posted vacancy with their applications, and

all of the applicants were interviewed by the selection committee. The selection committee then recommended three candidates to Judge Naman, who then interviewed the candidates personally. The evidence does not indicate that the hiring process or procedures were secretive or devoid of formal process.

In a third case cited by plaintiff, <u>Crawford v. Western Electric Co.</u>, 614 F.2d 1300 (5th Cir. 1980), the court found that, because the criteria for work assignments and review procedures were so subjective, the court would consider the plaintiffs to have been qualified to do the work and, therefore, to have satisfied the second prong of a <u>prima facie</u> case. In <u>Crawford</u>, employees were hired at "Index 1" and could progress to successively higher indexes if they "(1) perform work in the proper codes within the higher index and (2) receive a rating in the index review conference indicating that they are qualified in the proper codes." <u>Id.</u> at 1311. Statistical evidence indicated that on average white employees achieved "Index 3" a full year sooner than black employees and that it took black employees more than twice as long as white employees to reach "Index 5." <u>Id.</u> at 1313. There was also evidence of racially motivated conduct and language, such as supervisors addressing black employees as "boys" and a supervisor telling a black employee that he did not need any training because "he didn't figure there was nothing they could teach … a man of your background." <u>Id.</u> at 1314, 1316 n 29. The supervisors had no instructions or criteria to guide them in their reviews, they did not keep any records of the quality and efficiency of work done, and they doled jobs out based partly on the supervisor's perception of the employees' skills. <u>Id.</u> at 1314. The <u>Crawford</u> plaintiffs asserted

that they could not qualify for advancement because they were neither given work assignments, nor the required positive reviews.  The trial court found that the plaintiffs had not met a <u>prima facie</u> case because they had not shown that they were qualified to do the work.  The Fifth Circuit disagreed, stating that "an employer may not utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process, for example, is challenged as discriminatory." <u>Id.</u> at 1315, 1317.  The court found that the advancement requirements were "suspect" and expressed "a skepticism that Black persons dependent directly on decisive recommendations from Whites can expect non-discriminatory action." <u>Id.</u> at 1315, 1317.  The court concluded that:

> From the statistics, plus proof of subjectivity and racial incidents, we believe plaintiffs' evidence raises an inference either that blacks were not given opportunities equal to those given whites to work in higher codes or that, work opportunities being equal, whites were rated "qualified" much sooner than blacks on the average. In either case, the evidence is suggestive that whites were treated better in general.

<u>Id.</u> at 1317.  The defendant in <u>Crawford</u> was then given the opportunity to rebut the presumption that arose from plaintiffs having established a <u>prima facie</u> case. <u>Id.</u> at 1318-19.  The defendant in <u>Crawford</u> successfully rebutted the presumption as to work assignments after mid-1974 "by proving that economic factors played a large part in reducing available work and that supervisors were ordered to assign work on a racially neutral basis." <u>Id.</u> at p. 1219.

This Court finds that <u>Crawford</u> is not analogous to the instant case.  The subjective factors at issue in <u>Crawford</u> were being used to establish a statistical

prima facie case, rather than show pretext.  The Court agrees that subjective bases

for a decision are clearly less compelling and may be "suspect" when the

circumstances or other evidence indicate bias.  However, in the instant case, unlike

the Crawford case, the decision makers (ie. the committee members) were not all

outside her protected class (there were both men and women serving on the

committee), there is no statistical evidence tending to show discrimination, and

there is no evidence of discriminatory conduct or language.

Plaintiff contends that Defendants' reasons should not be believed because

Plaintiff is more qualified for the CJPO position than Battiste, and Battiste does not

even meet the minimum criteria listed in the job announcement.  Specifically,

Plaintiff points to the fact that Battiste does not have a "bachelor's degree in

counseling, criminal justice, psychology, sociology or a closely related field" and has

never been employed in a position involving juvenile delinquency, counseling or case

management.  However, Battiste had comparable education and experience.  As

discussed in the prior summary judgment ruling, Battiste has a bachelor's degree in

human resources management and an extensive law enforcement background,

including serving as the Chief of Police in Prichard and as a Lieutenant in the

Mobile County Sheriff's office.  As this Court previously stated:

> Simply pointing out Mosley's own credentials, as impressive as they are, does
> not by itself rebut the defendants' nondiscriminatory reason. Therefore, the
> court concludes that Mosley has failed to show that the disparities between
> her qualifications and Battiste's were "of such weight and significance that no
> reasonable person, in the exercise of impartial judgment, could have chosen
> the candidate selected over the plaintiff."

(Doc. 58, p. 19, quoting Brooks, 446 F.3d at 1163.

Moreover, as previously stated, pretext is not shown "unless it is shown *both* that the reason was false, and that discrimination was the real reason." Brooks, 446 F.3d at 1163 (citation omitted, emphasis in original). None of the evidence indicates that the reason Plaintiff was not recommended was because she was a woman, especially in light of the fact that two of the three candidates that were recommended by the committee were women. The Court therefore finds that the plaintiff has not shown pretext.

### 3. Count V

The remaining claim asserted in Count V consists of a § 1981 claim against the individual defendants[2] for retaliation in relation to the CJPO vacancy. Like Plaintiff's title VII discrimination claim discussed above, a retaliation claim based on circumstantial evidence is analyzed according to the McDonnell Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Anyanwu v. Brumos Motor Cars, Inc., 496 Fed.Appx. 943, 945–46 (11th Cir. 2012) (citing Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir.1998))

---

[2] The individual defendants in this case are Judge Naman and Battiste. Since the only retaliation claim remaining concerns Plaintiff not receiving the CJPO position the Court finds that Plaintiff does not have a viable retaliation claim against Battiste. Battiste was the candidate chosen for the CJPO position and was clearly not one of the decisionmakers. Accordingly, to the extent Plaintiff asserts her retaliation claim against Battiste, summary judgment is due to be granted in favor of Battiste.

("Racial discrimination and retaliation claims are cognizable under both Title VII and 42 U.S.C. § 1981, and they 'have the same requirements of proof and use the same analytical framework.' ").

The plaintiff bears the initial burden of establishing a <u>prima</u> <u>facie</u> case of retaliation, which she may do by demonstrating that (1) she engaged in statutorily-protected activity; (2) she suffered a materially adverse employment action; and (3) there was some causal relation between these two events. <u>Dixon v. The Hallmark Companies, Inc.</u>, 627 F.3d 849 (11th Cir. 2010). For the purposes of this renewed summary judgment motion there appears to be no dispute that plaintiff has established a <u>prima</u> <u>facie</u> case of retaliation. Thus, the Court turns to whether Defendants have proffered a legitimate nondiscriminatory reason for the decision and whether the plaintiff has shown pretext.

The Court finds that Defendants have proffered a legitimate nondiscriminatory reason. After being recommended by the selection committee for the reasons discussed above, Judge Naman selected Battiste because he was more qualified due to his extensive administrative and management experience. [3] Thus,

---

[3] Since this claim is asserted only against Judge Naman individually, it is only his actions that are in question. Thus, although the Eleventh Circuit seems to have suggested that the committee's recommendation must be parsed, it is not clear to this Court why the committee's decision would be relevant unless Judge Naman influenced the committee members or used his control over the process to affect the outcome of their decision. Plaintiff has not shown that either of these scenarios exist in this case. Given that plaintiff was not recommended by the selection committee and Battiste was, Judge Naman's decision not to hire her need not be overly compelling. However, the Court is mindful that Judge Naman was not required to

the burden now shifts to Plaintiff to demonstrate that these reasons were merely pretext for retaliation.

Plaintiff again argues that she was more qualified than Battiste. This argument fails for the same reason it fails under Plaintiff's discrimination claim. The alleged disparity in education and experience at best suggests that Judge Naman may have made a bad employment decision. Plaintiff cites various statements contained in Judge Naman's affidavit that mostly describe his concerns about Plaintiff. Plaintiff attempts to counter his statements with her own credentials and contends they are evidence of his retaliatory intent. However, after reviewing Naman's averments, the Court finds that they do not show retaliatory intent. "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as the reason is one that might motivate a reasonable employer." Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) (citation and internal quotations omitted). Judge Naman was entitled to hire Battiste over Moseley for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as [his] action is not for a [retaliatory] reason." Nix v. WLCY Radio/Rahall

---

follow the committee's recommendation. The evidence shows that Judge Naman found Battiste to be more qualified and had serious doubts about Plaintiff's ability to handle the CJPO position. The Court finds this sufficiently establishes a legitimate nondiscriminatory reason. To the extent the decision by the committee members is relevant, the Court found, above, that there were legitimate nondiscriminatory reasons for their actions.

Comm's, 738 F.2d 1181, 1187 (11th Cir. 1984).  Plaintiff has not shown that Judge Naman's reasons were pretextual.

## CONCLUSION

For the reasons discussed above, Defendants' renewed motion for summary judgment (Doc. 76) is hereby **GRANTED**.

**DONE** and **ORDERED** this  25th  day of July, 2014.

/s/ Callie V.S. Granade
**UNITED STATES DISTRICT JUDGE**